JOE McDowell v. State.

No. 2256.    Decided March 12, 1913.

Rehearing denied April 16, 1913.

1.—Pandering—Illegal Procuring—Prostitution—Indictment.

Where the indictment sufficiently charged the offense of procuring and attempting to procure or being concerned in procuring a female person to come into this State for the purpose of prostitution, the same was sufficient, and there was no error in overruling a motion to quash.

**2.—Same—Continuance.**

Where the alleged absent testimony was immaterial, there was no error in overruling a motion for continuance.

**3.—Same—Charge of Court—Fraud—Duress.**

The law does not require that procuring shall be done by fraud, duress, etc., but intends to prohibit persons from bringing into this State women to practice prostitution, and this, although the woman may be a prostitute, and there was no error in the court's refusal of defendant's requested charge requiring that the procuring must be done by fraud, etc.

**4.—Same—Bills of Exception.**

In the absence of bills of exception, the court's ruling on testimony cannot be considered on appeal.

**5.—Same—Charge of Court—General Objections.**

General objections to the court's charge without pointing out error cannot be considered on appeal; besides, the court's charge was sufficient. Following Sue v. State, 52 Texas Crim. Rep., 122, and other cases.

**6.—Same—Newly Discovered Evidence—Affidavits.**

Where no affidavits were attached to the motion for new trial on account of newly discovered evidence, the same cannot be considered on appeal; besides, the contention that prosecutrix was of loose morals before coming into the State was no defense to the offense of pandering.

**7.—Same—Sufficiency of the Evidence.**

Where, upon trial of pandering and procuring a woman to come to this State for the purpose of prostitution, the evidence sustained the conviction, there was no error.

Appeal from the District Court of Hopkins. Tried below before the Hon. R. L. Porter.

Appeal from a conviction of pandering; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

The indictment, omitting formal parts, charged that the defendant did then and there unlawfully in the State of Arkansas, procure one Gertrude McDaniel, a female person, to come from the State of Arkansas into the State of Texas and County of Hopkins in said State of Texas, for the purpose of prostitution on the part of her, the said Gertrude McDaniel, against the peace and dignity of the State.

*H. C. Connor*, for appellant.—On question of insufficiency of indictment: Morris v. State, 13 Texas Crim. App., 65; Woolsey v. State, 14 id., 57; Article 564, White's Criminal Procedure.

*C. E. Lane*, Assistant Attorney-General, for the State.

HARPER, JUDGE.—The prosecuting witness in this case testified: "My name is Gertrude McDaniel. I am married, was married in July two years ago. My maiden name was Walker. Prior to my marriage I lived with my father and mother at Dangerfield, Texas. I was raised there but not born there. My husband's name is Conner McDaniel. After I married I continued to live at Dangerfield until last July,

was a year ago. We moved from Dangerfield to DeQueen, Arkansas, where my husband worked in a livery barn. I know the defendant, Joe McDowell, and have known him since last Christmas. I first met him at DeQueen. When I first met the defendant my husband and I were living together at DeQueen, staying at Freeman's private boarding house. The defendant was working at a restaurant when I first met him and my husband was working at a livery barn. My husband and I separated some time in May of this year. We were living at DeQueen and staying at the Grabel Hotel when we separated. The defendant was living with his sister at that time. I had not been thrown with the defendant to any considerable extent before me and my husband separated. I had not had carnal intercourse with the defendant at the time me and my husband separated. After our separation the defendant and I continued to stay at the hotel. No one got me to stay there; the defendant told me that if I would sta, he would pay my board. I stayed there about three weeks and he paid my board. He had carnal intercourse with me during this time. I came to Texas some time in July of this year from DeQueen, Ark., and the defendant came with me. After I came to Texas I followed the business of having carnal intercourse with men. We first went to my father's and mother's home at Petty, Texas, where we stayed a day and night, we then went to Paris, Texas, the defendant and I. I had intercourse with ten or fifteen men at Paris, Texas. The cabman would go and get them for me and take me out into the country. From Paris I went to Whiteboro and the defendant went with me. I had intercourse with four or five men at Whiteboro. I went from Whiteboro to Texarkana and the defendant went with me. I had carnal intercourse with two men at Texarkana. The defendant and I occupied the same room at the K. C. S. Rooming House at Texarkana. We went from there to Mt. Pleasant. I had intercourse with eight or ten men at Mt. Pleasant. The defendant and I came from Mt. Pleasant to Sulphur Springs; we got here about the 11th day of August of this year. I came to Sulphur Springs for the same purpose that I had been doing. We first put up at the McClimmons House; we got there Saturday night and stayed there until the following Monday morning. The defendant and I occupied the same room at the McClimmons House. We went from the McClimmons House to the Gaines Boarding House, occupying the same room from Monday until Wednesday, when we were arrested. I did not have intercourse with men in Sulphur Springs. I was unwell during that time. I had made arrangements to meet one man here on Wednesday night. For the acts of intercourse at different places in Texas, I charged the men two dollars each. I got a letter from mama about a week before we left DeQueen to come to Texas. During that time the defendant talked to me at different times about coming to Texas and doing that line of business. The defendant came with me to Texas; we took the train at DeQueen and came to Petty. We were on the same train; we changed cars at

Texarkana.　Q.　Did he have any conversation on the train with you coming from DeQueen, Ark., to Texarkana about coming to Texas and following the life of a prostitute?　A.　If I did not want to stay at home. He told me I could make two or three hundred dollars a month at that business. I asked him how much to charge and he said not less than two dollars. I promised that I would go with him and follow the life of a prostitute. He was to rustle a part of the trade for me and send parties to me. He sent men to me two or three times. We did not intend to divide the money but use it as we needed it. I paid the expenses of these different trips and gave him money I had been making in this manner. When I came to Texas I stayed one night with my mother and then went out in this line of business and continued to follow it until I was arrested in Sulphur Springs on Wednesday. I came to Sulphur Springs to follow that business."

Our statute provides that if any one shall procure, attempt to procure, or be concerned in procuring any female person to come into this State for the purpose of prostitution, he shall be deemed guilty of a felony, and be punished by confinement in the penitentiary for any term of years not less than five. The indictment sufficiently charges the offense, and the court did not err in overruling the motion to quash the indictment. (Acts 32d Leg., Chap. 23, p. 29, Art. 441, Code of Crim. Proc., and sec. 347 White's Ann. Proc.)

There was no error in overruling the application for a continuance, as the fact that the prosecuting witness received $5.50 from her father just before leaving DeQueen is a fact shown by the evidence to be undisputed. That the witness often talked of coming to Texas is also a fact not disputed in the record. Consequently none of the testimony would have been material on the trial.

The special charge requested insofar as it is the law was covered by the court's main charge. The law does not require that procuring shall be done by fraud, duress, etc. The law intends to prohibit persons from bringing into this State women to practice prostitution, and to do so, although the woman may be a prostitute. If one should procure an innocent female by fraud or duress to come into this State with that end in view, doubtless a jury would inflict a more heavy penalty than where the woman was already a prostitute, but the object and purpose of the law is to prohibit the bringing of any and all class of females into this State to practice that vocation.

Those grounds in the motion for new trial complaining of the introduction and rejection of testimony can not be considered, as no bills of exception were reserved, if any such objections were made during the trial of the case.

Those grounds in the motion for new trial which set out certain paragraphs of the charge, and then stating: "the court erred in giving same because the same is incorrect in law and is not applicable to the evidence," are too general to be considered. No error is pointed out in the charge, if error there be. (Sue v. State, 52 Texas Crim.

Rep., 122.) However, we have read the charge of the court and he aptly applies the law to the evidence, and in the charge instructed the jury:

"If you have a reasonable doubt as to whether the defendant procured the said Gertrude McDaniel to come into the State of Texas for the purpose of prostitution; or if you have a reasonable doubt as to whether the defendant procured the said Gertrude McDaniel to come into the County of Hopkins, in said State of Texas, for the purposes of prostitution; or if you have a reasonable doubt as to the defendant's guilt, you will acquit him.

"In all criminal cases the defendant is presumed to be innocent until his guilt is established by legal and competent evidence beyond a reasonable doubt, and the burden of proof is on the State throughout the trial and never shifts to the defendant, and in case you have a reasonable doubt as to the defendant's guilt, you will acquit him."

This aptly presented the defense of appellant, and the court in the remaining portions of the charge defined the offense, and correctly instructed the jury under what conditions they would be authorized to convict.

There is no merit in that portion of the motion alleging newly discovered evidence. It would be no defense to show that she was a woman of loose morals before coming into this State. She admits it in her testimony. Our decisions all hold that where newly discovered testimony is relied on to secure a new trial, the application must be accompanied by the affidavit of the newly discovered witness or witnesses, or good cause be shown why this is not done. No affidavits are attached to the motion, and no reason stated why this is not done. Consequently, this ground presents no question in a way we can consider it. (Love v. State, 3 Texas Crim. App., 501; Cotton v. State, 4 Texas, 260; Evans v. State, 6 Texas Crim. App., 513.)

Appellant seems to have proceeded on the theory that if the prosecuting witness was an immoral woman before she came to Texas, it would be no offense to procure her to come into this State to ply her vocation. This is not the law. As it is shown that she came into this State to ply this vocation, and with appellant's aid and assistance she visited a number of towns and cities and in each of them she would sell her person to such persons as appellant might send to her, they living off the proceeds, we think the evidence is sufficient, and the judgment is affirmed.

*Affirmed.*

[Rehearing denied, April 16, 1913.—Reporter.]